**REESE LLP**
Michael R. Reese (SBN 206773)
Sue J. Nam (SBN 206729)
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Email: *mreese@reesellp.com*
　　　*snam@reesellp.com*

**REESE LLP**
George V. Granade (SBN 316050)
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070
Facsimile  (212) 253-4272
Email: *ggranade@reesellp.com*

**REESE LLP**
Charles D. Moore (admitted *pro hac vice*)
100 South 5th Street, Suite 1900
Minneapolis, MN 55402
Telephone: 212-643-0500
Fax: 212-253-4272
Email: *cmoore@reesellp.com*

**SHEEHAN & ASSOCIATES, P.C.**
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck New York 11021-5101
Telephone: (516) 303-0552
Email: *spencer@spencersheehan.com*

*Counsel for Plaintiff Sean McGinity
and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN MCGINITY, on behalf of himself and all others similarly situated,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>THE PROCTER & GAMBLE COMPANY,<br><br>　　　　　　Defendant. | Case No. 4:20-cv-08164-YGR<br><br>AMENDED CLASS ACTION COMPLAINT FOR:<br><br>1.  Violation of the California Consumers Legal Remedies Act<br>2.  Violation of the California False Advertising Law<br>3.  Violation of the California Unfair Competition Law<br><br>JURY TRIAL DEMANDED |

Plaintiff SEAN MCGINITY ("Plaintiff") brings this Class Action Complaint, on behalf of himself and all others similarly situated, against Defendant THE PROCTER & GAMBLE COMPANY ("Defendant"), demanding a trial by jury, and alleges as follows:

**JURISDICTION & VENUE**

1.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of California and the class he seeks to represent are also citizens of California and Defendant is a citizen of the State of Ohio; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

2.      Pursuant to 28 U.S.C. § 1391(d), venue is proper in this District because a substantial part of the events, omissions, acts and transactions giving rise to the claims herein occurred in Sonoma County, California.

SUMMARY OF THE ACTION

3.      This is a proposed class action complaint brought on behalf of a Class, as defined below, of California consumers who purchased personal care products ("PCPs") manufactured, marketed, advertised, sold and labeled by Defendant as: "PANTENE PRO-V NATURE FUSION" shampoos and conditioners.

4.      Defendant represents that the Products are natural, when, in fact, they contain non-natural and synthetic ingredients, harsh and potentially harmful ingredients, and are substantially unnatural.   Defendant's claims pertaining to the natural qualities of the Products are false, misleading, designed to deceive consumers into paying a price premium for the Products, and designed to mislead reasonable consumers into selecting Defendant's Products over other competing PCPs.  Indeed, a recent consumer survey of more than 400 consumers conducted by an independent third party evidences that a majority of consumers believe the phrase "Nature Fusion" means the product does NOT contain synthetic ingredients, when in fact that was not true. *See* Ex. A at question 14. The same survey revealed that a near majority (49.1%) of consumers believe the phrase "Nature Fusion" means the product contains ONLY natural ingredients. *See id* at question

15. Unfortunately for consumers the Products contain, synthetic, non-natural ingredients. This lawsuit seeks to enjoin Defendant's false and misleading practices and to recover damages and restitution on behalf of the class under applicable state laws.

**PARTIES**

5.      Plaintiff Sean McGinity is, and at all times relevant to this action has been, a citizen of California residing in the City of Santa Rosa, County of Sonoma, State of California.

6.      Plaintiff purchased Defendant's Products — Pantene Pro-V Nature Fusion Smoothing Shampoo and Pantene Pro-V Nature Fusion Smoothing Conditioner — on or about June 19, 2019 at a Safeway grocery store in Santa Rosa, California.

7.      Plaintiff purchased the Products, for which he paid a price premium, because he wanted to use personal care products that were natural. Plaintiff purchased Defendant's NATURE FUSION Products based on claims on the Product's label that the Products were of, by and from "NATURE".

8.      Plaintiff relied on Defendant's false and misleading labels in making his purchases, having been misled and deceived into thinking that Defendant's Products were from nature or otherwise natural. Had Plaintiff known at the time that the Products were not, in fact natural but were instead made with unnatural, synthetic ingredients, he would not have purchased the Products or paid a price premium to purchase them.

9.      If Plaintiff knew the Product labels were truthful and non-misleading, he would continue to purchase the Products in the future. At present, however, Plaintiff cannot be confident that the labeling of the Products is, and will be, truthful and non-misleading.

10.      Defendant THE PROCTER & GAMBLE COMPANY is incorporated in the State of Ohio, with its principal place of business at 1 Procter & Gamble Plaza, Cincinnati, Ohio 45202.

11.      Defendant manufactures, markets, advertises and sells personal care products, also known as PCPs, including the NATURE FUSION Products, one or more of which were purchased by Plaintiff and members of the proposed Class. Defendant manufactured, marketed, advertised, distributed and sold its NATURE FUSION Products widely throughout the State of California and

1  the Northern District of California during the class period.[1]

2      12.   Defendant is a top manufacturer and distributor of PCPs, with multi-outlet retail

3  sales in the regular shampoo category alone of nearly $600 million USD annually during the Class

4  Period.[2]

5      13.   At all time periods relevant to the allegations, claims and causes of action herein,

6  Defendant acted through its officers, directors, employees, agents, intermediaries, representatives

7  and vendors, all of whom were acting on Defendant's behalf and at Defendant's behest, with actual

8  or apparent authority, in committing the acts and omissions described herein.

9  FACTS COMMON TO ALL CAUSES OF ACTION

10      14.   Recently, the regular shampoo category in the U.S. has had overall growth of less

11  than one percent; during the same period, however, Defendant saw average gains of 21%.[3]

12      15.   In or about the year 2016, in order to maintain and increase market share, and to

13  capitalize on consumers' growing interest in and demand for natural and healthy PCPs, Defendant

14  revised, reformulated and rebranded its "Pro-V" line of PCPs to place an emphasis on NATURE

15  in its "NATURE FUSION" line of Products purchased by Plaintiff and the proposed Class.

16      16.   Defendant markets, advertises and sells its present formulations of NATURE

17  FUSION PCPs—the Products purchased by Plaintiff and members of the proposed Class—in

18  packaging which bears on its front the labels and inscriptions "NATURE FUSION" and an

19  avocado on a green leaf as depicted below:

20

21

22

23

24

---

25  [1] The Class Period shall encompass all sales from November 19, 2016 through the date of entry of class certification (the "Class Period").

26  [2] *Top shampoo players clean up*, Drug Store News, Vol. 38, No. 4 (April 2016) at pp. 24; drugstorenews.com.

27  [3] *Id*.

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14




15   17.    The Products purchased by Plaintiff and the proposed Class are deceptive and

16   misleading because the Products contain and are substantially comprised of non-natural

17   ingredients.

18   18.    "*Nature*" is commonly and reasonably understood as "*natural* condition" by

19   reasonable consumers.[4]  Natural is commonly and reasonably understood by reasonable consumers

20   to mean "as found in *nature* and *not* involving anything made or done by people" such as, for

21   example, "a natural substance."[5]

22   19.    'Natural' is commonly and reasonably understood by reasonable consumers in both

23   the affirmative: "existing in or produced by nature" and "having a form or appearance found in

24   _____

25   [4] Merriam-Webster, https://www.merriam-webster.com/dictionary/nature (last accessed May 22,

26   2020) (emphasis added).

27   [5] Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/natural (last accessed
     May 22, 2020) (emphasis added).

28

AMENDED CLASS ACTION COMPLAINT
- 4 -

1 nature"; and the negative: "*not* artificial" and "*not* cultivated."[6]

2   20. To the average and reasonable consumer, "**NATURE**" is reasonably understood to

3 mean 'natural' and 'not artificial.'

4   21. To the detriment of consumers, inclusive of Plaintiff and the proposed class,

5 Defendant's Products contain non-natural, synthetic ingredients.

6   22. All of Defendant's Products contain, *inter alia*, several of the following ingredients

7 that are not natural and/or synthetic:

8   &bull; sodium laureth sulfate

9   &bull; cocamidopropyl betaine

10   &bull; cocamide MEA

11   &bull; sodium citrate

12   &bull; sodium xylenesulfonate

13   &bull; fragrance

14   &bull; dimethiconol

15   &bull; citric acid,

16   &bull; sodium benzoate

17   &bull; guar hydroxypropylitrimonium chloride

18   &bull; disodium EDTA

19   &bull; panthenyl ethyl ether

20   &bull; methylchloroisothiazolinone

21   &bull; Yellow 5

22   &bull; methylisothiazolinone

23   &bull; Blue 1

24   &bull; Red 33

25   &bull; behentrimonium methosulfate,

26 _____

27 [6] Merriam-Webster, https://www.merriam-webster.com/dictionary/natural (last accessed May 22, 2020) (emphasis added).

28

1           • bis-aminopropyl dimethicone,

2           • benzyl alcohol

3           • dicetyldimodonium chloride

4       23.    Sodium laureth sulfate, cocamidopropyl betaine, cocamide MEA, sodium citrate,

5 sodium xylenesulfonate, fragrance, dimethiconol, citric acid, sodium benzoate, guar

6 hydroxypropylitrimonium chloride, disodium EDTA, panthenyl ethyl ether,

7 methylchloroisothiazolinone, Yellow 5, methylisothiazolinone, Blue 1, Red 33, behentrimonium

8 methosulfate, bis-aminopropyl dimethicone, benzyl alcohol, and dicetyldimodonium chloride are

9 not 'natural' ingredients, nor are they found in "NATURE."

10       24.    As further guidance as to what a reasonable consumer likely thinks is 'natural', the

11 Natural Products Association ("NPA"), a respected industry trade group, refuses to certify as

12 "natural" any products that contain:

13           ▪ cocamide MEA

14           ▪ behentrimonium methosulfate

15           ▪ cocamidopropyl betaine

16           ▪ dimethicone ("dimethiconol" in Defendant's PCPs)

17           ▪ disodium EDTA

18           ▪ methylisothiazolinone

19           ▪ sodium laureth sulfate

20       25.    All these ingredients all found in Defendant's "NATURE FUSION" Products.[7]

21       26.    The NPA Standard and Certification for PCPs also prohibits "Synthetic

22 Fragrances."[8]

23       27.    Upon information and belief, the "fragrance" in Defendant's Products is synthetic

24

---

25 [7] Natural Products Association, *NPA Standard and Certification for Personal Care Products*, The

26 Natural Standard (04/20/17), Prohibited ingredients, available at https://www.npanational.org/wp-content/uploads/2017/03/The-Natural-Standard-042717.pdf (last accessed May 22, 2020).

27 [8] *NPA Standard and Certification for Personal Care Products,* fn. 11, *supra.*

28

1   and thus prohibited by the NPA Standard and Certification for PCPs.

2          28.    The "fragrance" found in Defendant's Products is not natural nor is it associated

3   with "NATURE".

4          29.    The NPA Standard's definition of "natural" ingredients prohibits those that

5   incorporate or are derived from "petroleum compounds."[9]

6          30.    Yellow 5, or FD&C Yellow 5, is a synthetic dye produced from petroleum;[10] this

7   synthetic dye is present in Defendant's Products.

8          31.    Blue 1, or FD&C Blue 1, is a synthetic dye produced from petroleum;[11] this

9   synthetic dye is present in Defendant's Products.

10         32.    Red 33, or D&C Red 33, is a synthetic dye produced from petroleum or coal tar

11  sources;[12] this synthetic dye is present in Defendant's Products.

12         33.    Upon information and belief, Yellow 5, Blue 1 and Red 33—ingredients present in

13  Defendant's Products—are synthetic compounds which incorporate and/or are derived from

14  petroleum compounds, and are thus prohibited by the NPA Standard and Certification for PCPs.

15         34.    Yellow 5, Blue 1 and Red 33—ingredients present in Defendant's Products—are

16  not 'natural' nor are they associated with "NATURE".

17         35.    Indeed, a recent consumer survey of more than 400 consumers conducted by an

18  independent third party evidences that more than a majority (52.6%) of consumers believe the

19  phrase "Nature Fusion" means the product does NOT contain synthetic ingredients. *See* Ex. A at

20  question 14. The same survey revealed that a near majority (49.1%) of consumers believe the

21

22  _____

23  [9] *Id* at pp. 1.

24  [10] EWG Skin Deep Guide, available at https://www.ewg.org/skindeep/ingredients/702442-fd-c-yellow-5/ (last accessed May 22, 2020).

25
26  [11] EWG Skin Deep Guide, available at https://www.ewg.org/skindeep/ingredients/702408-fd-c-blue-1/ (last accessed May 22, 2020).

27  [12] EWG Skin Deep Guide, available at https://www.ewg.org/skindeep/ingredients/701803-d-c-red-33/ (last accessed May 22, 2020).

28

AMENDED CLASS ACTION COMPLAINT
AMENDED CLASS ACTION COMPLAINT

phrase "Nature Fusion" means the product contains ONLY natural ingredients. *See id* at question 15. Defendant's scheme to mislead and deceive consumers about the natural qualities of the Products is particularly egregious with respect to Defendant's use of synthetic dyes in the Products. Specifically, Defendant knowingly and intentionally manipulates the colors with unnatural synthetic dyes to make them appear more natural, while omitting these synthetic dyes from other sibling brands or sub-brands in the Pro-V line.  For example, Pro-V Daily Moisture Renewal and Pro-V Classic Clean shampoos have an opaque, milky color and creamy appearance, and are packaged in white or cream-colored bottles and the Pro-V Sheer Volume shampoo is completely clear and packaged in a clear bottle; none of these three brands or sub-brands list Yellow 5, Blue 1 and Red 33, nor does Defendant explicitly identify or list any similar synthetic dyes among the ingredients for the aforementioned Pro-V sibling brands or sub-brands. By contrast, Defendant's NATURE FUSION shampoo Product is clear, but packaged in a white/cream-colored bottle, reinforcing the deception that it is more natural by being color-free.  Furthermore, this result is achieved by using the aforementioned dyes to counteract the colors that would result from the reaction and interaction of the many synthetic, artificial, non-natural chemicals and ingredients in Defendant's shampoo Products.  Similarly, Defendant manipulates the color of its conditioner Products by adding synthetic dyes Yellow 5, Blue 1 and Red 33 to achieve a light green hue, evocative of the natural halved avocado depicted on the front of the Products' packaging, thus reinforcing the deception that it is more natural than similar and competing conditioner PCPs with a milky or creamy white hue.  Furthermore, this result is achieved by using the aforementioned dyes to counteract the colors that would result from the reaction and interaction of the many synthetic, artificial, non-natural chemicals and ingredients in Defendant's conditioner Products.

36.     Defendant's misrepresentations about the Products as set forth herein were uniform and were communicated to Plaintiff, and to every other member of the Class, at every point of purchase and consumption.

37.     By labelling the Products "NATURE", Defendant deceives and misleads reasonable consumers. A reasonable consumer purchases the Products believing they do not

1   contain non-natural and/or synthetic ingredients based on the Products' labeling.

2   38.   Reasonable consumers, including Plaintiff, purchased the Products based upon

3   their belief that they do not contain non-natural and/or synthetic ingredients.

4   39.   Unfortunately for consumers the Products contain synthetic, highly processed

5   and/or non-natural ingredients.

6   40.   Hence, Defendant's claims are false and misleading.

7   41.   Defendant has profited enormously from its false and misleading marketing of the

8   Products. Consumers either would not have purchased the Products had they known they were not

9   natural or would have purchased a less expensive product.

10   42.   In making the false, misleading, and deceptive representations and omissions

11   described herein, Defendant knew and intended that consumers would pay for, and/or pay a

12   premium for, Products labeled with the "Nature" represenation.

13   43.   As an immediate, direct, and proximate result of Defendant's false, misleading, and

14   deceptive representations and omissions, Defendant injured Plaintiff and the Class members in

15   that they:

16        a.   Paid a sum of money for the Products, which were not what Defendant

17           represented;

18        b.   Paid a premium price for the Products, which were not what Defendant

19           represented;

20        c.   Were deprived of the benefit of the bargain because the Products they

21           purchased were different from what Defendant warranted;

22        d.   Were deprived of the benefit of the bargain because the Products they

23           purchased had less value than what Defendant represented;

24        e.   Could not be used for the purpose for which they were purchased; and

25        f.   Were of a different quality than what Defendant promised.

26   44.   Had Defendant not made the false, misleading, and deceptive representations and

27   omissions, Plaintiff and the Class members would not have been willing to pay the same amount

28

1   for the Products they purchased, and/or Plaintiff and the Class members would not have been

2   willing to purchase the Products at all.

3       45.     Plaintiff and the Class members paid for Products that did not contain non-natural

4   and/or synthetic ingredients but received Products that contained non-natural and/or synthetic

5   ingredients. The Products Plaintiff and the Class members received were worth less than the

6   Products for which they paid.

7       46.     Based on Defendant's misleading and deceptive representations, Defendant was

8   able to, and did, charge a premium price for the Products over the cost of competitive products not

9   bearing the label.

10      47.     Plaintiff and the Class members all paid money for the Products. However, Plaintiff

11  and the Class members did not obtain the full value of the advertised Products due to Defendant's

12  misrepresentations and omissions. Plaintiff and the Class members purchased and/or paid more

13  for, the Products than they would have had they known the truth about the Products. Consequently,

14  Plaintiff and the Class members have suffered injury in fact and lost money as a result of

15  Defendant's wrongful conduct.

16                              **RULE 9(b) ALLEGATIONS**

17      48.     Federal Rule of Civil Procedure ("Rule") 9(b) provides that "[i]n alleging fraud or

18  mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed.

19  R. Civ. P. 9(b). As detailed in the paragraphs above, Plaintiff has satisfied the requirements of Rule

20  9(b) by establishing the following elements with sufficient particularity:

21      49.     WHO: Defendant made material misrepresentations and failed to adequately

22  disclose material facts as detailed herein. Except as identified herein, Plaintiff is unaware, and

23  therefore unable to identify, the true names and identities of those individuals at Defendant who

24  are responsible for such material misrepresentations and/or omissions.

25      50.     WHAT: Defendant made material misrepresentations regarding the inclusion of

26  non/natural and/or synthetic ingredients in the Products. Specifically, Defendant labeled the

27  Products as "Nature Fusions" which communicates to reasonably consumers that the Products

28

contained only natural ingredients and did not contain non/natural and/or synthetic ingredients. These representations were false and misleading because the Products contain non/natural and/or synthetic ingredients .

51.    WHEN: Defendant made the material misrepresentations, omissions, and non-disclosures detailed herein continuously at every point of purchase and consumption throughout the Class Period.

52.    WHERE: Defendant's material misrepresentations, omissions, and non-disclosures detailed herein were made, *inter alia*, on the packaging of the Products.

53.    HOW: Defendant made numerous, written material misrepresentations on the packaging of the Products that were designed to, and, in fact, did, mislead Plaintiff and Class members into purchasing the Products.

54.    WHY: Defendant engaged in the material misrepresentations, omissions, and non-disclosures detailed herein for the express purpose of inducing Plaintiff and other reasonable consumers to purchase and/or pay a premium for the Products based on the belief that the Products were for a designated age range. Defendant profited by selling the Products to thousands of unsuspecting consumers.

## CLASS ALLEGATIONS

55.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23.  Plaintiff seeks to represent the following class  ("Class" or "California Class") defined as follows:

> All consumers within the State of California who purchased the Products
> from June 5, 2016 to time of trial for their personal use, rather than for resale
> or distribution.  Excluded from the Class are Defendant's current or former
> officers, directors, and employees; counsel for Plaintiff and Defendant; and
> the judicial officer to whom this lawsuit is assigned.

The requirements of Federal Rule of Civil Procedure 23 are satisfied because:

A.    Numerosity: The members of the class are so numerous that joinder of all

members is impracticable.  While the exact number of class members is presently unknown to Plaintiff, based on Defendant's volume of sales, Plaintiff estimates that it is in the thousands.

        B.    <u>Commonality</u>: There are questions of law and fact that are common to the class members and that predominate over individual questions.  These include the following:

        i.    Whether Defendant materially misrepresented to the class members that the Products are from "nature" (*i.e.* are 'natural');

        ii.    Whether Defendant's misrepresentations and omissions were material to reasonable consumers;

        iii.    Whether Defendant's labeling, marketing, and sale of the Products constitutes an unfair, unlawful, or fraudulent business practice;

        iv.    Whether Defendant's labeling, marketing, and sale of the Products constitutes false advertising;

        v.    Whether Defendant's conduct injured consumers and, if so, the extent of the injury; and

        vi.    The appropriate remedies for Defendant's conduct.

        C.    <u>Typicality</u>: Plaintiff's claims are typical of the claims of the class members because Plaintiff suffered the same injury as the class members—*i.e.*, Plaintiff purchased the Products based on Defendant's misleading representations that the Products are natural.

        D.    <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the members of each class.  Plaintiff does not have any interests that are adverse to those of the class members.  Plaintiff has retained competent counsel experienced in class action litigation and intends to prosecute this action vigorously.

        E.    <u>Superiority</u>: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender.  Since the damages suffered by individual class members are relatively

small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged, while an important public interest will be served by addressing the matter as a class action.

56.     The prerequisites for maintaining a class action for injunctive or equitable relief under Federal Rule of Civil Procedure 23(b)(2) are met because Defendant had acted or refused to act on grounds generally applicable to each class, thereby making appropriate final injunctive or equitable relief with respect to each class as a whole.

### **FIRST CAUSE OF ACTION**

**(Violation of the California Consumers Legal Remedies Act – By the California Class)**

57.     Plaintiff incorporates by reference the allegations set forth above.

58.     Plaintiff and the California Class members are "consumers" under the California Consumers Legal Remedies Act ("CLRA"), California Civil Code section 1761(d).

59.     The Products are "goods" under California Civil Code section 1761(a).

60.     The purchases by Plaintiff and the California Class members of the Products are "transactions" under California Civil Code section 1761(e).

61.     As alleged above, Defendant has violated California Civil Code sections 1770(a)(5), (a)(7), and (a)(9) by making false representations on the Product packaging and in marketing (as detailed herein) that the Products are natural when in fact they contain synthetic and/or highly processed ingredients, which are not natural.

62.     Plaintiff and the California Class members relied on the representations by Defendant.  Plaintiff and the California Class members would not have purchased the Products at the price offered if they had known that, contrary to Defendant's representations, the Products are not, in fact, natural.  Plaintiff and the California Class members suffered damages equal to the purchase price of the Products.

63.     On information and belief, Defendant's actions were willful, wanton, and fraudulent.

64.     On information and belief, officers, directors, or managing agents at Defendant

authorized the use of the misleading statements about the Products.

65.     Plaintiff seeks injunctive relief.

66.     Plaintiff also seeks damages.  Pursuant to California Civil Code 1782(a), Defendant was sent a pre-suit demand letter or June 5, 2020 that demanded that Defendant correct, repair, replace, or otherwise rectify the goods at issue here. Defendant refused to comply with the demand.

67.     Pursuant to Civil Code sections 1780 and 1782, Plaintiff and California Class members seek damages in an amount to be proven at trial, an injunction to bar Defendant from continuing their deceptive advertising practices, and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**

**(Violation of the California False Advertising Law – By the California Class)**

68.     Plaintiff incorporates by reference the allegations set forth above.

69.     The California False Advertising Law ("FAL"), California Business and Professions Code section 17500 *et seq.*, makes it unlawful for a person, firm, corporation, or association to induce the public to buy its products by knowingly disseminating untrue or misleading statements about the products.

70.     Defendant's labeling and advertisings includes untrue and misleading statements that the Products are natural. These representations were and continue to be likely to deceive a reasonable consumer.  If consumers knew the true facts regarding the Products, as detailed above, they would not have purchased the Products.  Defendant knew, or reasonably should have known, that its representations concerning the Products were and are untrue and misleading, since they know how the Products and their ingredients are manufactured.   Defendant made the representations at issue with the intent to induce Plaintiff and the California Class members to purchase the Products.  Plaintiff and the California Class members purchased the Products in reliance on the untrue and misleading representations by Defendant.

71.     Pursuant to California Business & Professions Code section 17535, Plaintiff and the California Class members seek restitution of the purchase price paid for the Products and an injunction barring Defendant from continuing its deceptive advertising practices.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## THIRD CAUSE OF ACTION

**(Violation of the California Unfair Competition Law – By the California Class)**

72.   Plaintiff incorporates by reference the allegations set forth above.

73.   The California Unfair Competition Law, California Business and Professions Code section 17200 *et seq.*, prohibits any unlawful, unfair, or fraudulent business act or practice.

74.   Defendant's conduct is unlawful because it violates the CLRA and the FAL as alleged below.

75.   Defendant's conduct is fraudulent because, as alleged above, Defendant's representations concerning the Products were false and misleading, and Plaintiff and the California Class members relied on those representations in purchasing the Products.

76.   Plaintiff and the California Class members have suffered injury in fact and lost money as a result of Defendant's conduct, since they purchased the Products in reliance on Defendant's misrepresentations and would not have purchased the Products if they had known the true facts about the Products.

77.   Pursuant to California Business and Professions Code § 17203, Plaintiff and the California Class members seek restitution of the purchase price paid for the Products, as well as an injunction barring Defendant from continuing its deceptive advertising practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against Defendant as follows:

A.   For an order enjoining Defendant from continuing the unlawful practices set forth above;

B.   For an order declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

C.   For compensatory damages according to proof;

D.   For punitive damages according to proof;

E.   For reasonable attorneys' fees and costs of suit;

1      F.      For pre-judgment interest; and

2      G.     For such other relief as the Court deems proper.

3                           **<u>DEMAND FOR JURY TRIAL</u>**

4     Plaintiff hereby demands trial by jury on all claims so triable.

5     Date:  September 21, 2021       Respectfully submitted,

6

7                           **REESE LLP**
                             *<u>/s/ Charles D. Moore</u>*

8                           Charles D. Moore (admitted *pro hac vice*)
                           100 South 5th Street, Suite 1900

9                           Minneapolis, MN 55402
                           Telephone: 212-643-0500

10                        Fax: 212-253-4272
                         Email: *cmoore@reesellp.com*

11

12                        **REESE LLP**
                         Michael R. Reese (Cal. State Bar No. 206773)

13                     *mreese@reesellp.com*
                         Sue J. Nam (Cal. State Bar No. 206729)

14                     *snam@reesellp.com*
                         100 West 93rd Street, 16th Floor

15                        New York, New York 10025
                         Telephone: (212) 643-0500

16                      Facsimile:  (212) 253-4272

17

18                        **REESE LLP**
                         George V. Granade (Cal. State Bar No. 316050)

19                     *ggranade@reesellp.com*
                         8484 Wilshire Boulevard, Suite 515

20                      Los Angeles, California 90211
                         Telephone: (310) 393-0070

21                      Facsimile: (212) 253-4272

22                        **SHEEHAN & ASSOCIATES, P.C.**

23                     Spencer Sheehan
                         505 Northern Blvd Ste 311

24                      Great Neck New York 11021-5101
                         Telephone: (516) 303-0552

25                      Email: *spencer@spencersheehan.com*

26                        *Counsel for Plaintiff and the Proposed Class*

27

28

# Ex. A

# ALL COMPLETES - Report for Project - 090321-1 - Shampoo Study



Response Counts

| | | |
|---|---|---|
| **Completion Rate:** | **100%** | |
| | Complete | 403 |

**Totals: 403**

## 1. What is your age?



| Value | | Percent | Responses |
|---|---|---|---|
| 18 to 24 | | 15.9% | 64 |
| 25 to 34 | | 20.1% | 81 |
| 35 to 44 | | 21.8% | 88 |
| 45 to 54 | | 15.4% | 62 |
| 55+ | | 26.8% | 108 |

Totals: 403

2

## 2. What is your gender?



| Value | | Percent | Responses |
|-------|---|---------|-----------|
| Male | | 48.4% | 195 |
| Female | | 51.6% | 208 |

Totals: 403

3

## 3. Which State do you live in?



| Value | | Percent | Responses |
|---|---|---|---|
| Arizona | | 3.5% | 14 |
| California | | 8.2% | 33 |
| Florida | | 9.4% | 38 |
| Georgia | | 4.7% | 19 |
| Illinois | | 4.2% | 17 |
| Michigan | | 4.5% | 18 |
| New Jersey | | 3.2% | 13 |
| New York | | 6.0% | 24 |
| Ohio | | 4.2% | 17 |
| Pennsylvania | | 3.7% | 15 |
| Texas | | 7.2% | 29 |
| Alabama | | 2.5% | 10 |

Totals: 403

| Value | | Percent | Responses |
|---|---|---|---|
| Alaska | | 0.5% | 2 |
| Arkansas | | 0.2% | 1 |
| Colorado | | 1.2% | 5 |
| Connecticut | | 0.7% | 3 |
| Delaware | | 0.2% | 1 |
| District of Colombia | | 0.2% | 1 |
| Hawaii | | 0.2% | 1 |
| Indiana | | 2.0% | 8 |
| Iowa | | 1.0% | 4 |
| Kansas | | 2.0% | 8 |
| Kentucky | | 1.5% | 6 |
| Louisiana | | 1.5% | 6 |
| Maryland | | 2.5% | 10 |
| Massachusetts | | 2.2% | 9 |
| Minnesota | | 1.0% | 4 |
| Mississippi | | 1.2% | 5 |
| Missouri | | 2.5% | 10 |
| Nevada | | 0.5% | 2 |
| New Hampshire | | 0.5% | 2 |
| New Mexico | | 1.2% | 5 |
| North Carolina | | 2.7% | 11 |
| Oklahoma | | 1.0% | 4 |

Totals: **403**

| Value | | Percent | Responses |
|---|---|---|---|
| Oregon | | 1.7% | 7 |
| Rhode Island | | 0.2% | 1 |
| South Carolina | | 2.0% | 8 |
| South Dakota | | 0.2% | 1 |
| Tennessee | | 2.0% | 8 |
| Utah | | 1.2% | 5 |
| Virginia | | 1.7% | 7 |
| Washington | | 1.7% | 7 |
| Wisconsin | | 1.0% | 4 |

**Totals: 403**

4. Which of the following items, if any, have you purchased in the last 6 months? Select all that apply.



| Value | | Percent | Responses |
|---|---|---|---|
| Soft drinks | | 84.6% | 341 |
| Chocolate bars / candy | | 80.6% | 325 |
| Cookies | | 80.4% | 324 |
| Granola bars | | 52.4% | 211 |
| Ketchup | | 74.9% | 302 |
| Coffee | | 77.9% | 314 |
| Shampoo / Conditioner | | 100.0% | 403 |
| Oatmeal | | 57.8% | 233 |
| Tea | | 61.0% | 246 |
| Cereal | | 85.6% | 345 |
| Mustard | | 64.0% | 258 |
| Hummus | | 24.1% | 97 |
| Milk | | 90.3% | 364 |
| Vegetable oil | | 66.3% | 267 |

5. Which of the following brands of shampoo/conditioner, if any, have you purchased in the past 6 months? Select all that apply.



| Value | | Percent | Responses |
|---|---|---|---|
| Pantene | | 37.7% | 152 |
| Garnier Fructis | | 23.6% | 95 |
| L'Oreal | | 28.5% | 115 |
| Nexxus | | 8.9% | 36 |
| Dove | | 43.4% | 175 |
| Suave | | 39.2% | 158 |
| Aveeno | | 19.1% | 77 |
| Neutrogeena | | 15.6% | 63 |
| Head & Shoulders | | 35.7% | 144 |
| Redken | | 7.4% | 30 |
| American Crew | | 5.2% | 21 |
| None of the above | | 9.4% | 38 |



6.                      When you see the label on the above-

pictured product, does that convey to you that it contains natural ingredients?



4% Don't Know

12% No

84% Yes

| Value | | Percent | Responses |
|-------|---|---------|-----------|
| Yes | | 84.1% | 339 |
| No | | 12.2% | 49 |
| Don't Know | | 3.7% | 15 |

**Totals: 403**



7.                                   When you see the label on the above-

pictured product, does it convey that it contains synthetic/ artificial
ingredients?



13

| Value | | Percent | Responses |
|---|---|---|---|
| Yes | | 28.8% | 116 |
| No | | 58.6% | 236 |
| Don't Know | | 12.7% | 51 |

**Totals: 403**

14



8.                           When you see the label on the above-pictured product, does that convey to you that it contains more natural ingredients than synthetic/artificial ingredients or more synthetic/artificial ingredients than natural ingredients?



| Value | | Percent | Responses |
|---|---|---|---|
| More natural ingredients than synthetic/artificial ingredients | | 74.9% | 302 |
| More synthetic/artificial ingredients than natural ingredients | | 11.4% | 46 |
| Don't Know | | 13.6% | 55 |

**Totals: 403**

16



9.                          If the product was made mostly from

synthetic/artificial ingredients, would you be less likely to purchase this product?



| Value | | Percent | Responses |
|-------|-----|---------|-----------|
| Yes | | 66.3% | 267 |
| No | | 33.7% | 136 |

Totals: 403



10.        When you see the label on the above-

pictured product, does that convey to you that it contains natural ingredients?



| Value | | Percent | Responses |
|-------|---|---------|-----------|
| Yes | | 85.4% | 344 |
| No | | 9.9% | 40 |
| Don't know | | 4.7% | 19 |

Totals: **403**



11.    When you see the label on the above-

pictured product, does it convey that it contains synthetic/artificial ingredients?



| Value | | Percent | Responses |
|---|---|---|---|
| Yes | | 25.3% | 102 |
| No | | 62.0% | 250 |
| Don't know | | 12.7% | 51 |

**Totals: 403**



12.      When you see the label on the above-

pictured product, does that convey to you that it contains more natural ingredients than synthetic/artificial ingredients or more synthetic/artificial ingredients than natural ingredients?



| Value | | Percent | Responses |
|---|---|---|---|
| More natural ingredients than synthetic/artificial ingredients | | 77.4% | 312 |
| More synthetic/artificial ingredients than natural ingredients | | 8.9% | 36 |
| Don't Know | | 13.6% | 55 |

**Totals: 403**



13.      If the product was made mostly from synthetic/artificial ingredients, would you be less likely to purchase this product?



36% No

64% Yes

| Value | | Percent | Responses |
|-------|---|---------|-----------|
| Yes |  | 63.8% | 257 |
| No |  | 36.2% | 146 |

Totals: 403

14.  Does the

phrase "Nature Fusion" mean the product does NOT contain synthetic ingredients?



47% No, there are synthetic ingredients

53% Yes, there are no synthetic ingredients

| Value | | Percent | Responses |
|---|---|---|---|
| Yes, there are no synthetic ingredients | | 52.6% | 212 |
| No, there are synthetic ingredients | | 47.4% | 191 |

Totals: 403



15. Does the phrase "Nature Fusion" mean the product contains ONLY natural ingredients?



51% No   49% Yes

| Value | | Percent | Responses |
|-------|---|---------|-----------|
| Yes | | 49.1% | 198 |
| No | | 50.9% | 205 |

Totals: 403




16. Does the phrase "Nature Fusion" mean the product contains BOTH natural and synthetic ingredients?



31% No

69% Yes

| Value | | Percent | Responses |
|---|---|---|---|
| Yes | | 69.2% | 279 |
| No | | 30.8% | 124 |

Totals: 403

## 17. What is your ethnicity? Select all that apply.



| Value | | Percent | Responses |
|---|---|---|---|
| African American | | 13.9% | 56 |
| Asian (non Pacific Islander) | | 3.2% | 13 |
| Caucasian | | 70.5% | 284 |
| Central Asian | | 0.5% | 2 |
| Chinese | | 0.7% | 3 |
| Filipino | | 1.5% | 6 |
| Hispanic/Latino | | 10.7% | 43 |
| Middle Eastern/North African | | 0.2% | 1 |
| Mixed Racial from Caribbean Islands | | 0.2% | 1 |
| Native American, Eskimo, Aleutian | | 2.5% | 10 |
| Other Ethnicity | | 2.5% | 10 |

## 18. What is the highest level of education which you have completed?



| Value | | Percent | Responses |
|---|---|---|---|
| Completed some high school | | 3.7% | 15 |
| High school graduate | | 26.1% | 105 |
| Completed some college | | 25.8% | 104 |
| Associate degree | | 11.2% | 45 |
| Bachelor's degree | | 23.3% | 94 |
| Completed some postgraduate | | 2.0% | 8 |
| Master's degree | | 7.2% | 29 |
| Ph.D., law or medical degree | | 0.7% | 3 |

Totals: 403

34

## 19. What is your current marital status?



| Value | | Percent | Responses |
|---|---|---|---|
| Single, never married | | 33.5% | 135 |
| Married | | 40.2% | 162 |
| Divorced | | 8.9% | 36 |
| Separated | | 3.5% | 14 |
| Widowed | | 3.2% | 13 |
| Living with partner or significant other | | 9.9% | 40 |
| Prefer not to answer | | 0.7% | 3 |

Totals: 403

35

## 20. What is your annual household income?



| Value | | Percent | Responses |
|---|---|---|---|
| $19,999 or less | | 15.4% | 62 |
| $20,000-$29,999 | | 15.9% | 64 |
| $30,000-$39,999 | | 10.9% | 44 |
| $40,000-$49,999 | | 11.4% | 46 |
| $50,000-$59,999 | | 10.9% | 44 |
| $60,000-$69,999 | | 6.9% | 28 |
| $70,000-$79,999 | | 8.2% | 33 |
| $80,000-$89,999 | | 4.5% | 18 |
| $90,000-$99,999 | | 2.5% | 10 |
| $100,000-$124,999 | | 5.7% | 23 |
| $125,000-$149,999 | | 4.0% | 16 |
| $150,000+ | | 3.7% | 15 |

Totals: 403