**Pages 1 - 10**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Yvonne Gonzalez Rogers, Judge

| | |
|---|---|
| SEAN MCGINITY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | **NO. CV 20-08164-YGR** |
| ) | |
| THE PROCTER & GAMBLE COMPANY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Oakland, California
Tuesday, December 7, 2021

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
    REESE LLP
    8484 Wilshire Boulevard, Suite 515
    Los Angeles, CA 90211
  **BY: GEORGE GRANADE, ESQUIRE**

For Defendant:
    KING AND SPALDING LLP
    50 California Street, Suite 3300
    San Francisco, CA 94111
  **BY: GEORGE MORRIS, ESQUIRE**

    KING AND SPALDING LLP
    1185 6th Avenue
    New York, NY 10036
  **BY: JOHN HOOPER, ESQUIRE**

Reported By:    Pamela Batalo-Hebel, CSR No. 3593, RMR, FCRR
                Official Reporter

| | |
|---|---|
| 1 | **Tuesday - December 7, 2021**                                    **3:08 p.m.** |
| 2 | **P R O C E E D I N G S** |
| 3 | ---o0o--- |
| 4 | **THE CLERK:** We are now calling CV 20-8164, McGinity |
| 5 | vs. The Proctor & Gamble Company. |
| 6 | Counsel, starting with the plaintiff, please state your |
| 7 | appearance for the record. |
| 8 | **MR. GRANADE:** Good afternoon, Your Honor. George |
| 9 | Granade from Reese LLP on behalf of the plaintiffs and proposed |
| 10 | class. |
| 11 | **MR. MORRIS:** Good afternoon, Your Honor. George |
| 12 | Morris from King & Spalding LLP on behalf of the defendant, |
| 13 | Proctor & Gamble Company. |
| 14 | **MR. HOOPER:** Good evening, Your Honor. It's John |
| 15 | Hooper from King & Spalding in New York for Proctor & Gamble. |
| 16 | **THE COURT:** Okay. Good afternoon/evening to |
| 17 | everybody. |
| 18 | We are here on a motion to dismiss. This is the second |
| 19 | round. I've been through this once before. There are a couple |
| 20 | of things we should go through. |
| 21 | First of all, no one really disputes what the standard of |
| 22 | review here is. We've got a standard motion to dismiss. It |
| 23 | tests the legal sufficiency of the claims alleged. *Illeto vs.* |
| 24 | *Glock*, 349 F.3d 1191, Ninth Circuit case, and obviously *Iqbal* |
| 25 | and *Twombly*. |

1       One of the issues relates to whether or not there is
2  sufficiency under Rule 9(b) versus under Rule 8.  I think with
3  respect to the 9(b) arguments, I would deny the motion on that
4  ground.  I think it's pretty clear what the plaintiff is
5  alleging.  However, given my last order and given -- we ran a
6  redline on the Complaint and the changes that were made.  I
7  don't think that there have been changes that change my
8  decision from the first time around.
9       So I would grant the motion this time, and, Mr. Granade --
10 am I saying your name right, sir?
11          **MR. GRANADE:**  It's "Grenade."
12          **THE COURT:**  Granade.
13      One of the -- one of the realities is, is that if you
14 disagree with me, which you probably do, it's better for to you
15 take it to the Ninth Circuit now because I'm not going to
16 change my mind, and it will save you having to get this
17 decision after you spent all the time and expense.  But
18 nothing's really changed since the first round.  You kind of
19 changed the words in the Complaint, but ultimately the
20 allegations are the same.
21      So I just disagree with your posturing of "NatureFusion"
22 and some of the case law with respect to what that means or
23 what "natural" means, and I think it was Question 16, right, of
24 the survey that said almost 70 percent thought that this could
25 be combined synthetics with the other elements.  I just -- I

1  don't think -- and don't get me wrong.  I don't mind consumer
2  actions.  I think that we have to keep corporations making
3  accurate representations, but I don't -- I -- this case I don't
4  think does it.
5       You may proceed.
6            **MR. GRANADE:**  Understood, Your Honor.
7       It sounds like Your Honor has carefully reviewed the
8  facts.  You pointed out Question 16, and that is, indeed, a
9  part of the survey which we understand.
10      As we did in our papers, we would reiterate there are, you
11 know, other questions in the survey that appear to go the other
12 way and, indeed, favor us.  Question 14 shows that over half of
13 the consumers that answered that question said that
14 "NatureFusion" means the product does not contain synthetic
15 ingredients.  Same thing Question 15, 49.1 percent, a little
16 bit less than half, but it's still that -- we believe that that
17 should be enough to create a fact question at the motion to
18 dismiss stage as to whether this claim is plausible.  49.1
19 percent of consumers believe that "NatureFusion" means the
20 product contains only natural ingredients, which is indeed --
21 we think those questions were directly on point with the issue
22 Your Honor raised in the previous order, as I'm sure Your Honor
23 is aware from the papers.
24      One thing I would like to go over, given Your Honor's
25 statements, the *Paulino v. Conopco* case -- I think that the

1    *Paulino v. Conopco* case and the *Goldemberg v. Johnson & Johnson*
2    consumer case -- companies -- are both very similar cases to
3    this one.  They're not identical, but there are some very
4    similar circumstances, namely, the representation in the
5    *Paulino* case, "Suave NATURALS" -- it's important to point out
6    that the word "naturals" is a noun just like the word "nature"
7    here is a noun, so to the extent the defendant is saying, Well,
8    "nature" is a noun and that's very different from "naturals,"
9    we would respectfully disagree based on the authority from
10   *Paulino* and *Goldemberg*.  *Goldemberg*, same representation,
11   "naturals" -- it's "active naturals" in *Goldemberg*, and, again,
12   even though it was a noun, the court found it was at least
13   plausibly actionable.
14       Related to that under -- for *Paulino*, we'd also like --
15   and *Goldemberg*, for that matter, we'd like to point out that
16   the defendant says the plaintiff hasn't raised a case that has
17   a word in it attached to the word "natural" or "nature" or
18   doesn't have a modifier, like in this case there is a modifier.
19   It's "fusion."  Well, I would like to point out in the *Paulino*
20   case, actually there is a modifier.  It's "Sauve."  But even
21   more compelling is in the *Goldemberg* case, the word "active" is
22   the modifier.  And the defendant -- I was actually counsel --
23   one of the counsel for the plaintiffs in the *Goldemberg* case,
24   and I know that the defendant there, just like the defendant
25   here, argued that, Well, there is this modifier.  It says

1  "active naturals."  That's not the same thing as "natural."  I
2  mean, just like the defendant here, they're trying to sort of
3  split hairs about this supposed difference, but the court, I
4  think rightly in the *Goldemberg* case --
5              (Voice interruption)
6         **MR. GRANADE:**  I'm sorry.  I didn't hear.
7         **THE COURT:**  I wasn't saying anything, Mr. Granade.
8         **MR. GRANADE:**  I apologize.  I heard someone say
9  something.
10        Okay.  So the -- the *Paulino* and the *Goldemberg* cases,
11 admittedly we were not able to find -- I surveyed the
12 nationwide case law, and unfortunately I wasn't able to find
13 anything with the word "nature" particularly.  We think the
14 *Paulino* and *Goldemberg* cases are very, very similar.  In both
15 those cases, the plaintiff survived dismissal.
16        One other point on *Paulino*.  There was a secondary
17 representation in the *Paulino* case, so the main one was "Sauve
18 NATURALS" on these personal care products, including shampoos
19 and conditioners.  There is a secondary representation,
20 "infused with," and, you know, "infused" is awfully similar to
21 the word "fusion," and the word "infused with" in the *Paulino*
22 case was in fact on the front of the packaging.  You can see
23 that on page -- it's Star 4, I believe, from *Paulino*.  And Star
24 4, Note 5, also discusses the word "infused." and the court was
25 not convinced that somehow the presence of the word "infused,"

1   which, you know, how is that materially different than
2   "fusion," the court allowed the claim to proceed nevertheless.
3       So just to summarize, we think that we have alleged new
4   facts in the form of these new survey questions that were not
5   present in the previous Complaint, particularly Question 14,
6   Question 15, and we would respectfully submit that between
7   these new questions and evaluating the case in light of other
8   very similar authority, *Paulino* and *Goldemberg*, that, you know,
9   we have at least raised a plausible claim.
10          **THE COURT:**  Which of the two of you is responding?  Is
11  it you, Mr. morris?
12          **MR. MORRIS:**  Yes, Your Honor, I'll respond.
13      Your Honor, the *Paulino* case and the *Goldemberg* case
14  discussed by plaintiff's counsel was a case that was cited the
15  first time around.  And the first time around, Your Honor
16  looked at those cases, and said, "I do not see how these facts
17  fit with the facts of this case."
18      And Your Honor noted that the absence of the word
19  "natural" was very telling on our label, and therefore the
20  Court found that the cases cited by plaintiff, including the
21  ones that he just discussed, were not applicable here and were
22  not the same.  And that it's not only because the words
23  "natural" or "all natural" or "a hundred percent natural" does
24  not exist here like it did in these other cases but also
25  because of the modifier, which we do think is important.

1    As far as the survey goes, Your Honor, the two questions
2    that were asked were -- were asked in such a way that really
3    there were only two responses that could be given. I would
4    have liked to have seen 14, 15, and 16 all asked as a multiple
5    choice because I think that it was very clear that if you
6    include in the question whether or not "NatureFusion" means a
7    mixture of both nature and synthetic ingredients, we saw from
8    the survey 70 percent believes that that's the case.
9    So, Your Honor, there is really nothing in either the
10   rearguing of the case law already submitted and rejected by
11   Your Honor the first time around nor in the survey that should
12   do anything to change your previous decision and your
13   inclination as you stated previously.
14          **THE COURT:** Mr. Granade, anything else?
15          **MR. GRANADE:** I would just like to make, I guess, one
16   additional point. Given Your Honor's thoughts that you stated
17   earlier, I won't belabor the issue.
18   I would like to, however, reiterate a point that we put in
19   the papers regarding the word "fusion." The defendant makes
20   much of the word "fusion" and seems to indicate that somehow
21   the word "fusion" certainly lets the consumer know that there
22   must be something synthetic in this product, but in fact the
23   word "fusion" does not necessarily imply that there are
24   synthetics. It could be a fusion of natural ingredients, and
25   there's -- certainly as a matter of law, you know, we would

1 respectfully submit that the Court should not hold that as a
2 matter of law, "fusion" must lead only to the conclusion that
3 the thing that's fused with the natural ingredients is
4 synthetic ingredients.  It could be a combination of natural
5 ingredients.
6 　　　　Defendant makes an analogy to the music context.  We would
7 just say that that is a totally different field and it's not
8 apposite here, and at the best, all that is is -- all that does
9 is give rise to factual questions that really shouldn't be
10 decided at this stage.
11 　　　　And we would say, you know, the definition of "fusion"
12 also includes, for example, nuclear fusion among atomic nuclei
13 which could -- it could include fusion of two identical nuclei
14 like hydrogen fusion would be a hydrogen fusing of a hydrogen.
15 Their analogy to music is -- you may say, Well, what does
16 nuclear fusion have to do with it?  Well, we're saying what
17 does music have to do with it?
18 　　　　Long story short, these are all fact questions that really
19 require further factual development before you can answer them,
20 and there is certainly nothing about the word "fusion" that
21 requires dismissal, in our view.
22 　　　　Thank you.
23 　　　　　　　**THE COURT:**  Okay.  Anything else?
24 　　　　　　　**MR. MORRIS:**  I have nothing further, Your Honor.
25 　　　　　　　**THE COURT:**  Mr. Granade?

1         **MR. GRANADE:**  Nothing further.  Your Honor.
2         **THE COURT:**  All right.  I'm going to take one more
3  look at those survey questions.  I tend to agree that survey
4  questions can be done in a way that actually masks what the
5  real issue is.  And I'll double check the case that we looked
6  at on the first round, but I suspect that my decision won't
7  change.
8      And if the Ninth Circuit tells me that I'm wrong, that's
9  their prerogative.  Okay?
10         **MR. GRANADE:**  Understood, Your Honor.
11         **THE COURT:**  Good enough.  Thank you, gentlemen.
12         **MR. HOOPER:**  Thank you, Your Honor.  Have a good
13  evening.
14         **MR. MORRIS:**  Thank you, Your Honor.
15         **THE COURT:**  You, too.
16             (Proceedings adjourned at 3:21 p.m.)

CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:   Thursday, June 16, 2022

*Pamela Batalo Hebel*
_____
Pamela Batalo Hebel, CSR No. 3593, RMR, FCRR
U.S. Court Reporter